The slip opinion is the first version of an opinion released by the Clerk of the Court of Appeals. Once an opinion is selected for publication by the Court, it is assigned a vendor-neutral citation by the Clerk of the Court for compliance with Rule 23-112 NMRA, authenticated and formally published. The slip opinion may contain deviations from the formal authenticated opinion.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

Opinion Number: _____

Filing Date: <u>May 30, 2024</u>

**No. A-1-CA-39416**

**BRYCE FRANKLIN,**

      Plaintiff-Appellant,

v.

**KEEFE COMMISSARY NETWORK,**
**LLC, formerly identified as THE KEEFE**
**GROUP,**

      Defendant-Appellee.

**APPEAL FROM THE DISTRICT COURT OF SANTA FE COUNTY**
**Maria Sanchez-Gagne, District Court Judge**

Bryce Franklin
Las Cruces, NM

Pro Se Appellant

Rodey, Dickason, Sloan, Akin & Robb, P.A.
Stephanie K. Demers
Albuquerque, NM

for Appellee

**OPINION**

**BOGARDUS, Judge.**

{1}     The opinion filed on March 8, 2022, is hereby withdrawn, and this opinion is substituted in its place, following Plaintiff's timely motion for rehearing, which this Court granted.

{2}     Plaintiff Bryce Franklin, a self-represented state inmate, appeals the district court's order dismissing his claim under the New Mexico Inspection of Public Records Act (IPRA), NMSA 1978, §§ 14-2-1 to -12 (1947, as amended through 2023), against Defendant Keefe Commissary Network, LLC. On appeal, Plaintiff argues that Defendant is subject to IPRA "despite being a private corporation, by standing in the shoes of [New Mexico Corrections Department] NMCD." Because we conclude that Plaintiff stated a claim under IPRA, we reverse and remand.

**BACKGROUND**

{3}     Plaintiff sought records related to commissary prices for state prisoners, in the custody of NMCD, based on his belief that prices are not set at fair market value. Defendant is a private corporation contracting with Corrections Industries, a division of NMCD, to "establish and maintain an inmate commissary program" at New Mexico state facilities.

{4}     Initially, Plaintiff submitted two written requests to NMCD seeking documents related to commissary pricing. NMCD's first response stated that

"[Defendant], under contract with [NMCD], sets [commissary] prices[, t]herefore NMCD has no responsive documents regarding this request." In response to Plaintiff's second request, NMCD provided Defendant's mailing address to Plaintiff. Based on NMCD's responses, Plaintiff proceeded to submit two written requests to Defendant seeking information substantially similar to the information that he initially requested from NMCD regarding commissary pricing. Defendant did not respond to either request.

{5}    After receiving no response, Plaintiff filed the underlying complaint against Defendant to enforce IPRA, alleging that commissary prices are required by "law, regulation and contract" to be set at fair market value and that Defendant "stands in the shoes" of NMCD by setting commissary prices. In response, Defendant moved to dismiss the case pursuant to Rule 1-012(B)(6) NMRA, arguing the district court lacked subject matter jurisdiction and that Defendant is not subject to IPRA because it is a private entity.[1]

---

[1]Defendant's argument regarding lack of subject matter jurisdiction changes from its motion dismiss to the argument made on appeal. In the motion to dismiss, Defendant argues that the district court lacks subject matter jurisdiction over the matter because Plaintiff failed to comply with the rules regarding service of process set out in Rule 1-004(G) NMRA, since it was not served via its registered agent or principal place of business. However, on appeal, Defendant argues there is no subject matter jurisdiction because, as a public body, it has no records custodian and therefore "IPRA's mandate for appointment of a custodian does [not] apply to it and . . . the governing law precluded the [d]istrict [c]ourt from exercising jurisdiction under those circumstances." Regardless, it appears that the district court based its motion to dismiss on the latter ground.

{6}    The district court held a hearing on Defendant's motion to dismiss. During the hearing, Plaintiff cited to the factors this Court established in *State ex rel. Toomey v. City of Truth or Consequences*, 2012-NMCA-104, 287 P.3d 364, in arguing that Defendant is subject to IPRA. He asked the district court to weigh those factors in his favor and deny Defendant's motion.

{7}    Ultimately, in its oral ruling, the district court concluded that Defendant is not a public entity under IPRA because access to commissary is a privilege rather than a state function, and also that it lacked subject matter jurisdiction because the IPRA requests were not sent to a custodian of public records. The district court's order granting Defendant's motion stated that it lacked subject matter jurisdiction over Plaintiff's claim "because the [c]omplaint fail[ed] to allege any of the statutory prerequisites to state a claim under [IPRA] . . . [and] that [Defendant] is not a public entity and therefore not subject to IPRA." Plaintiff appeals.

**DISCUSSION**

**I.    Standard of Review**

{8}    "A district court's decision to dismiss a case for failure to state a claim under Rule 1-012(B)(6) is reviewed de novo." *Walsh v. Montes*, 2017-NMCA-015, ¶ 6, 388 P.3d 262 (internal quotation marks and citation omitted). When reviewing a motion to dismiss, we accept as true all facts well-pleaded and question only whether the plaintiff might prevail under any state of facts provable under the claim, because

"[a] motion to dismiss tests the legal sufficiency of the complaint, not the facts that support it." *Callaway v. N.M. Dep't of Corrections*, 1994-NMCA-049, ¶ 3, 117 N.M. 637, 875 P.2d 393 (alteration, internal quotation marks, and citation omitted). "A motion to dismiss should be granted only if it appears that upon no facts provable under the complaint could the plaintiff recover or be entitled to relief." *Castillo v. Santa Fe Cnty.*, 1988-NMSC-037, ¶ 4, 107 N.M. 204, 755 P.2d 48 (emphasis omitted). "We review de novo the underlying questions of statutory interpretation and application of the relevant statutory provisions to the facts alleged." *TexasFile LLC v. Bd. of Cnty. Comm'rs*, 2019-NMCA-038, ¶ 9, 446 P.3d 1173. For the reasons that follow, we conclude the district court erred in dismissing Plaintiff's claim and therefore reverse.

**II.  Plaintiff's Complaint Sufficiently States a Claim Under IPRA**

{9}     This case hinges on whether Plaintiff sufficiently alleged that Defendant, as a private entity, is subject to an action to enforce IPRA. The public policy underlying IPRA is that "all persons are entitled to the greatest possible information regarding the affairs of government and the official acts of public officers and employees." Section 14-2-5. Public bodies are required to designate at least one custodian of public records to receive and respond to requests. Section 14-2-7(A), (B). "Any person wishing to inspect public records may submit an oral or written request to the custodian." Section 14-2-8(A). IPRA has two provisions providing for damages;

4

Sections 14-2-11(C), -12(D). Each provision "create[s] separate remedies depending on the stage of the IPRA request." *Faber v. King*, 2015-NMSC-015, ¶ 16, 348 P.3d 173. This case concerns Section 14-2-11(C)—which applies when "the custodian fails to respond to a request or deliver a written explanation of the denial." *Faber*, 2015-NMSC-015, ¶ 16. Here, it is undisputed that Defendant failed to respond to Plaintiff's requests.

{10}     This Court has previously held that private entities, like Defendant, may be subject to an action to enforce IPRA. In *Toomey*, this Court acknowledged that private entities often perform traditional public functions such as "fire protection, transportation, jails, after-school programs, and health care." 2012-NMCA-104, ¶ 26. In light of this reality we stated that "[t]o allow such [private] entities to circumvent a citizen's right of access to records by contracting . . . would thwart the very purpose of IPRA and mark a significant departure from New Mexico's presumption of openness at the heart of our access law." *Id.* As such, we adopted a flexible approach "that favors access to records even when held by a private entity." *Id.* In applying such a flexible approach, we use a totality of the circumstances test to decide "whether private entities are subject to IPRA's disclosure requirements." *Id.* ¶ 22; *see also id.* ¶ 20 (stating "we find support for utilizing this procedure in our cases that have considered when a private entity performs a public function such that it must comply with statutes generally governing only government agencies"). When

determining whether a private entity is subject to IPRA's disclosure requirements we consider the following:

> 1) the level of public funding; 2) commingling of funds; 3) whether the activity was conducted on publicly owned property; 4) whether the services contracted for are an integral part of the public agency's chosen decision-making process; 5) whether the private entity is performing a governmental function or a function for which the public agency would perform; 6) the extent of the public agency's involvement with, regulation of, or control over the private entity; 7) whether the private entity was created by the public agency; 8) whether the public agency has a substantial financial interest in the private entity; and 9) for whose benefit the private entity is functioning.

*Id.* ¶ 13 (text only) (citation omitted). "[N]o one factor is determinative, and all relevant factors need to be analyzed on a case-by-case basis." *Id.* ¶ 22. This list of factors provides a starting point—it is nonexhaustive. *See id.*

{11}     Following our decision in *Toomey*, we have held that a private entity contracting with NMCD for the provision of medical services is subject to enforcement under IPRA. *See N.M. Found. for Open Gov't v. Corizon Health*, 2020-NMCA-014, ¶ 26, 460 P.3d 43. In *Corizon Health*, the petitioners submitted written IPRA requests to a private entity, requesting to inspect "all settlement documents involving [the private entity] in its role as medical services contractor for NMCD." *Id.* ¶ 3. This Court concluded that, under IPRA, the private entity "ha[d] a clear legal duty to provide public records to [the p]etitioners," because it "acted on behalf of a public entity [NMCD] by providing medical care to inmates at various New Mexico correctional and detention facilities." *Id.* ¶ 26 (noting that petitioners sought

6

enforcement of IPRA via a writ of mandamus). Thus, this Court has recognized that private entities who contract with state agencies and perform functions that the state agency would ordinarily have performed, may be subject to an IPRA enforcement action.

{12} Defendant argues that Plaintiff's complaint fails because the facts of this case can be distinguished from those in *Toomey* and *Corizon Health*. Relying almost exclusively on one of the nine *Toomey* factors—Defendant argues that, unlike in *Toomey*, here, there was no commingling of funds between Defendant and NMCD as a part of its function in running the commissary. As we previously stated, the *Toomey* factors represent a nonexhaustive list of factors to consider under these circumstances—no one factor dominates over the others. *See Toomey*, 2012-NMCA-104, ¶¶ 13-14 (noting just one of the nine factors used to assess whether a private entity is subject to IPRA is the commingling of funds). Moreover, Defendant attempts to distinguish *Corizon Health* on the basis that commissary services are unlike "constitutionally mandated healthcare services" because "[i]t is well-established that there exists no constitutional right to purchase items from a prison commissary." Defendant cites no case law to support its contention that in order for a private entity to be subject to IPRA's provisions, it must provide constitutionally mandated services. *See ITT Educ. Servs., Inc. v. N.M. Tax'n Revenue Dep't*, 1998-NMCA-078, ¶ 10, 125 N.M. 244, 959 P.2d 969 (refusing to consider a proposition

that was unsupported by citation to authority). We are not persuaded by Defendant's attempts to distinguish *Toomey* and *Corizon Health* from the facts of this case.

{13}     Based on the aforementioned relevant law, we conclude that to plead an action for enforcement of IPRA against a private entity, a plaintiff must simply allege (1) that the records sought are public records, *see* § 14-2-1 (stating that "[e]very person has a right to inspect public records of this state"); (2) arising out of the private entity's performance of a public function, *see Corizon Health*, 2020-NMCA-014, ¶¶ 17, 21; and (3) that the private entity has failed to comply with IPRA via the manner outlined in either Section 14-2-11(C) or -12(D). *See Derringer v. State*, 2003-NMCA-073, ¶ 10, 133 N.M. 721, 68 P.3d 961 (stating a right to enforce IPRA attaches only "*if* the public body does not comply[, c]onversely, then, once the custodian complies, the public body is no longer subject to an enforcement action").

{14}     The second pleading requirement is particularly at issue here—i.e., whether the records sought arose out of Defendant's performance of a public function. As we stated above, no one *Toomey* factor is determinative as to whether a private entity is subject to IPRA's disclosure requirements—rather, the analysis must consider the unique factual circumstances of each case. *See Toomey*, 2012-NMCA-104, ¶ 22 (stating that "all relevant factors need to be analyzed on a case-by-case basis"). Therefore, a plaintiff must simply allege facts sufficient to provide a basis for bringing an IPRA enforcement action against a private entity—a plaintiff is not

8

required to show that such an action will be successful. *See Garcia v. Coffman*, 1997-NMCA-092, ¶ 11, 124 N.M. 12, 946 P.2d 216 ("Under our rules of notice pleading, it is sufficient that defendants be given only a fair idea of the nature of the claim asserted against them sufficient to apprise them of the general basis for the claim." (alteration, internal quotation marks, and citation omitted)); *see also Delfino v. Griffo*, 2011-NMSC-015, ¶ 9, 150 N.M. 97, 257 P.3d 917 (stating "we accept all well-pleaded factual allegations in the complaint as true and resolve all doubts in favor of the sufficiency of the complaint").

{15}    Here, it is undisputed that Defendant did not respond to Plaintiff's record requests and based on our review of the complaint and relevant law, we conclude that Plaintiff sufficiently alleged that Defendant is subject to an enforcement action under IPRA—despite not serving the records request to a custodian of public records. Plaintiff's first request to Defendant sought:

> [A]ll public records connected to canteen prices set for New Mexico state prisoners. This is to include but not limited to any records used to set prices at fair market value, any "annual comparisons" between commissary prices and local convenience store[s], any documents explaining or demonstrating why state canteen prices are higher th[a]n private prisons, and any other public records connected to canteen prices at both state and private facilities in [Defendant's] possession.

Plaintiff's second request, in response to a rise in commissary prices, sought:

> [A]ll public records connected to "product pricing" at Guadalupe County Correctional facility in Santa Rosa, NM . . . to include but not limited to any records that are factors in the August 5th, 2019 price raise such as product cost, labor and freight cost and justification.

Additionally, Plaintiff's complaint alleged:

> 5. [Commissary] prices for state prisoners must be provided at fair market value [pursuant to NMSA 1978, Section] 33-8-6(D) [(2005)].

> 6. Upon information and belief [commissary] prices are not set at fair market value.

> 7. On February 4th, 2019 [Plaintiff] submitted a public record[s] request to NMCD for any public records used to determine [commissary] prices.

> 8. NMCD's final response stated that [Defendant] sets [commissary] prices.

Plaintiff further alleged that the records requested are public records, that Defendant is a public entity for purposes of IPRA, and that Defendant failed to comply with IPRA. Moreover, Plaintiff specifically cited to Section 33-8-6(D) in his complaint to support his claim that the documents he requested from Defendant are directly related to its alleged performance of a public function.

{16}   Section 33-8-6(D) falls within the Corrections Industries Act (the Act), NMSA 1978, §§ 33-8-1 to -16 (1981, as amended through 2017). Pursuant to Section 33-8-6(D), the Corrections Industries Commission (the Commission) has the power and duty to,

> approve the prices at which all services and products provided, manufactured, produced or harvested by enterprises shall be furnished; provided that the prices shall be as near the prevailing market price as possible. As used in this subsection, "prevailing market price" means the prevailing price that an equivalent product or service would have if purchased by a state agency or local body from community sources.

10

The commission shall include data provided by the purchasing division of the general services department in the price determination process.

Under the Act, an "enterprise" is defined, in part, as a service operation "within the bounds of a facility but does not include standard facility maintenance activities and services." Section 33-8-2(C). The plain language of Section 33-8-6(D) clearly and unambiguously requires the Commission to approve the prices of products provided by "enterprises" and to have involvement in the price determination process. *See Quynh Truong v. Allstate Ins. Co.*, 2010-NMSC-009, ¶ 37, 147 N.M. 583, 227 P.3d 73 (stating "when a statute contains language which is clear and unambiguous, we must give effect to that language and refrain from further statutory interpretation") (text only) (citation omitted)); *see also High Ridge Hinkle Joint Venture v. City of Albuquerque*, 1998-NMSC-050, ¶ 5, 126 N.M. 413, 970 P.2d 599 (stating that "the plain language of a statute is the primary indicator of legislative intent" (internal quotation marks and citation omitted)).

{17} We conclude that Defendant is an "enterprise" within the meaning of Section 33-8-6(D), thus supporting Plaintiff's claim that the records sought are public records arising out of Defendant's alleged performance of a public function. The Act grants the Commission the power and duty to "determine whether any enterprise should be established, expanded, diminished, or discontinued." Section 33-8-6(B). The contractual agreement between Defendant and NMCD is governed by Section 33-8-13—an adjacent statutory section to Section 33-8-6(D), also under the Act.

Section 33-8-13 allows for the operation of a private industry on the grounds of NMCD correctional facilities. *See also* § 33-8-13(B) (referring to agreements entered into between NMCD and an enterprise). Reading these statutory provisions together, it is clear that the agreement between Defendant and NMCD arises out of the Commission's authority to establish an enterprise and also that Defendant is an enterprise within the meaning of the Act. *See Dep't of Game & Fish v. Rawlings*, 2019-NMCA-018, ¶ 6, 436 P.3d 741 (stating when engaging in statutory interpretation, "[w]e consider all parts of the statute together, reading the statute in its entirety and construing each part in connection with every other part to produce a harmonious whole" (alterations, internal quotation marks, and citation omitted)). Defendant proffers no argument that it is not an "enterprise" as defined by Section 33-8-2(C)—in fact, Defendant fails to address the Act entirely, despite Plaintiff's reliance on Section 33-8-6(D) as the basis for his claim against it.

{18}   In light of Plaintiff's allegations and the relevant law, we conclude that Plaintiff sufficiently stated a claim for an action to enforce IPRA, against Defendant. Therefore, the district court erred in dismissing Plaintiff's claim. In so concluding, we reject Defendant's argument that the district court lacked subject matter jurisdiction over Plaintiff's claim on grounds that he served the requests to a private entity. *See Corizon Health*, 2020-NMCA-014, ¶ 26 (holding that under IPRA, petitioner's had a "clear legal right of enforcement against" a private entity because

it "acted on behalf of a public entity," despite not having a custodian of public records).

{19} We reiterate that in "reviewing the dismissal of a complaint for failure to state a cause of action, we accept as true all facts well pleaded and question only whether the plaintiff *might* prevail under any [provable] state of facts." *Callaway*, 1994-NMCA-049, ¶ 3 (emphasis added) (internal quotation marks and citation omitted). The question is not whether, as Defendant contends, "[Plaintiff definitively] established that [Defendant] is subject to . . . IPRA," but whether Plaintiff established, under the facts of the complaint, that Defendant *may* be subject to IPRA. *See id.*

**CONCLUSION**

{20} For the foregoing reasons, we reverse and remand for further proceedings consistent with this opinion.

{21} **IT IS SO ORDERED.**

_____
**KRISTINA BOGARDUS, Judge**

**WE CONCUR:**

_____
**JACQUELINE R. MEDINA, Judge**

_____
**SHAMMARA H. HENDERSON, Judge**

13